# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| JORGE L. MANCHA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00071-P |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States of America's Motion for Summary Judgment (ECF No. 18). Having considered the motion, briefing, and applicable law, the Court finds that the United States' Motion for Summary Judgment should be and is hereby **GRANTED.** Accordingly, Plaintiff Jorge L. Mancha's ("Mancha") claims against the United States are hereby **DISMISSED with prejudice.**

## BACKGROUND

Mancha is a sixty-five-year-old prisoner in the custody of the Federal Bureau of Prisons (BOP). *See* ECF No. 1 at 2. This lawsuit concerns the medical treatment Mancha received while in federal custody at Federal Medical Center, Fort Worth (FMC Fort Worth). *See* Def.'s App. MSJ at 1.

Mancha alleges that he experienced severe pain and discomfort in multiple areas of his body, including his knees, right elbow, lower back, right shoulder, and left foot. *See* Pl.'s Orig. Pet. at 3. Mancha alleges that he "continuously" brought these issues to the

attention of FMC Fort Worth medical staff, but they failed to provide him with timely care, evaluation, and treatment. *Id.* at 3, 5–6.

Mancha suffers from significant health issues, including: hyperlipidemia; chronic kidney disease, stage 3; osteoarthritis of the knee and hip; gout; hypertension; anemia; gross hematuria; benign localized hyperplasia of the prostate; a past history of a repaired ACL and meniscus tear in the right knee (repaired in 2010); and renal cell carcinoma with a partial nephrectomy in November 2015. *See* Def.'s App. MSJ at 3–5; 12-17; 35–38.

Mancha's medical records demonstrate that FMC Fort Worth medical staff responded to Mancha's complaints of pain by, among other things, conducting various tests to evaluate his conditions, prescribing and adjusting multiple types of medications, authorizing the use of specialized shoes and other accommodations, and otherwise providing timely medical care as appropriate. Mancha's medical records include numerous instances in which he either raised no concerns regarding pain or affirmatively reported to medical staff that he suffered no pain whatsoever. In particular, Mancha's relevant medical records reflect the follow medical visits and treatment:

- On January 24, 2017, Mancha was seen at sick call complaining of pain in his left big toe. Mancha reported that the pain had begun the night prior and rated it as a six out of ten. Mancha noted that he had a history of gout and had experienced similar joint pain several months ago. The attending mid-level provider (MLP) ordered Indomethacin (nonsteroidal anti-inflammatory drug (NSAID)) for pain, ordered laboratory tests, and recommended that he be confined to living quarters except for meals, pill line, and medical treatment. *Id.* at 32–34, 36, 39, 57, 60.

2

- On January 26, 2017, Mancha reported to sick call to request a lower bunk pass and a pass for frequent urination. The attending nurse noted that Mancha suffered from gout, had a previous knee surgery in 2014, but reported no pain at that time. *Id.* at 30–31.

- On February 8, 2017, Mancha was seen by a nurse following a CT scan of his kidney. Mancha reported no pain at that time. *Id.* at 28–29.

- On February 10, 2017, Mancha was seen by a nurse following a dermatology procedure (removal of melanoma from right jaw). Mancha reported no pain at that time. *Id.* at 26–27.

- On February 13, 2017, Mancha was seen by an MLP for wound care following a dermatology procedure. The MLP evaluated Mancha, including conducting a general musculoskeletal assessment. The MLP determined that Mancha did not have any joint pain at that time. *Id.* at 24–25.

- On April 27, 2017, Mancha was evaluated by an MLP after complaining of joint pain in the right hip, right shoulder, right elbow, and right knee. Mancha reported that the pain began three to five days prior. Mancha rated the pain as five out of ten. Mancha reported that the pain was exacerbated by walking, but relieved by NSAIDs. The MLP conducted a musculoskeletal exam, finding swelling, tenderness, and decreased range of motion in his hip. The MLP noted that Mancha had osteoarthritis of the hip and a history of gout. The MLP renewed his prescription for Indomethacin, and ordered x-rays of the right knee, right elbow, and right

shoulder, and laboratory tests (lipid profiles). The MLP counseled Mancha about gout and the importance of his diet. *Id.* at 4, 21–23, 34, 36, 53, 57, 60–61.

- On May 2, 2017, x-rays were taken of Mancha's right knee, right shoulder, and right elbow. The results were unremarkable, except for minimal osteoarthritic changes in his knee and an 8 mm posterior olecranon spur. *Id.* at 40–43.

- On July 12, 2017, Mancha was evaluated by a nurse in connection with an upcoming urology procedure (Urolift). Mancha reported no pain at that time. *Id*. at 20.

- On July 28, 2017, Mancha was evaluated by a nurse following a urology procedure. Mancha reported no pain at that time. *Id*. at 18–19.

- On September 20, 2017, Dr. Charles Eilert conducted Mancha's Chronic Care Clinic visit (CCC). Mancha reported low back and knee pain. Dr. Eilert conducted a lumbar exam, as well as a bilateral knee exam, and diagnosed Mancha with "Osteoarthritis of knee," "Gout," and "Osteoarthritis of hip." Dr. Eilert noted that Mancha needed a follow up appointment with Nephrology regarding his stage 3 kidney disease and all NSAIDs would be held until the consultation was complete. Dr. Eilert noted he would switch Mancha's pain medications from Indomethacin to Cymbalta (Duloxetine) and Tylenol. Dr. Eilert instructed Mancha to return immediately if his condition worsened. *Id*. at 12–17, 60.

- On September 22, 2017, Dr. Eilert noted that Mancha reported that Tylenol was not effective in controlling his knee pain, which Mancha rated as four out of ten. *Id*. Dr. Eilert ordered Cymbalta (Duloxetine) for pain and discontinued Indomethacin. *Id*. at 10–11, 34, 60.

- On September 29, 2017, Mancha reported to sick call complaining that Cymbalta was not helping his knee pain, which he rated as four out of ten. An MLP discontinued the Cymbalta (Duloxetine) and ordered Elavil (Amitriptyline) for pain. *Id*. at 7–9, 34, 59–60.

- On January 22, 2018, Mancha reported to sick call and reported pain in both knees, right shoulder, and lower back. Mancha rated the pain as six out of ten. The attending nurse noted that Mancha grimaced and groaned during a range of motion assessment. Finding no other indications of issues, swelling, etc., the nurse placed Mancha on his provider's schedule for further evaluation. *Id*. at 49–50.

- On February 12, 2018, Mancha was seen by an MLP for pain intervention related to a separate pulmonary/respiratory issue. Mancha did not report any joint pain at that time. *Id*. at 62.

- On April 3, 2018, Mancha reported to sick call reporting gout pain in his big left toe. Mancha explained that the pain began one week prior. He rated the pain as five out of ten. An MLP examined Mancha's toe and assessed the condition as gout. The MLP ordered Allopurinol (to treat gout) and issued a temporary soft shoe pass. *Id*. at 51, 55, 59, 62.

- On April 17, 2018, Mancha had a follow-up visit regarding his toe pain. Mancha described the pain as five out of ten. Mancha reported that he had been experiencing pain over the past three to four weeks. Mancha indicated that the pain was relieved by NSAIDs and resting. The MLP assessed the issue as gout and ordered an x-ray of the toe and laboratory tests. The MLP renewed Mancha's lower bunk pass and

- soft shoe pass and instructed Mancha to follow-up at sick call as needed. *Id*. at 46–48, 51, 54, 58, 61–62.

- On April 19, 2018, an x-ray was taken of Mancha's big left toe. There was no acute fracture, joint space malalignment, or soft tissue abnormality. *Id*. at 56, 61.

- On May 15, 2018, Mancha was evaluated by an MLP after requesting that his soft shoe pass be renewed. Mancha reported that he felt that Morton's Neuroma was causing pain and discomfort in his left foot, knees, and hips. Mancha's vital signs were taken and the MLP told Mancha that he would be scheduled to be seen by his assigned provider for further evaluation. Mancha then became verbally aggressive and the MLP gave him a direct order to leave the area. *Id*. at 44–45.

Mancha's complex medical issues, including his history of renal cell carcinoma and partial nephrectomy, current chronic kidney disease, osteoarthritis, and gout, impacted the treatment FMC Fort Worth medical staff provided. This is particularly true with respect to pain, as certain types of medication that were effective (NSAIDs) were discontinued due to secondary concerns regarding Mancha's chronic conditions.

When a person claims to have been injured due to the negligence or wrongful act of a federal employee, the Federal Tort Claims Act (FTCA) generally requires the claimant to file an administrative tort claim with the relevant federal agency prior to the initiation of any litigation. *See* 28 U.S.C. § 2401(b). Consistent with this requirement, Mancha filed an administrative tort claim (Claim Number TRT-SCR-2-18-0591) with the BOP on July 10, 2018. *See* ECF No. 1 at 10–13 (alleging that medical staff at FMC Fort Worth had been refusing to address his pain in his left foot, left knee, right elbow, lower

back, and right shoulder). Mancha subsequently filed this suit on January 22, 2019, after the passage of six months without receiving any decision on his administrative tort claim, as allowed by the FTCA. *See* ECF No. 1 at 2. The United States filed its Answer to Mancha's Complaint on April 29, 2019. *See* ECF No. 13. The United States filed the instant Motion for Summary Judgment on September 30, 2019. *See* ECF No. 18. On December 3, 2019, the Court issued an order, noting that Mancha's deadline to respond to the Motion for Summary Judgment was October 21, 2019, but that the Court would extend Mancha's time to file a response to December 30, 2019. *See* ECF No. 23. The Court further stated that if Mancha failed to file a response by the newly extended deadline, the Court would accept the facts in the United States' motion as uncontroverted. *See id.* As of the date of this order, Mancha has still not filed a response to the Motion for Summary Judgment. Accordingly, the motion is ripe for the Court's review, and the Court accepts the United States' statements of fact as uncontroverted.

## LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by

identifying the portions of the record which reveal there are no genuine material fact issues. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id*. at 250.

## ANALYSIS

The United States moved for summary judgment on the grounds that Mancha has failed to designate any expert witnesses to support his medical malpractice claim. Br. Supp. MSJ at 5, ECF No. 19 at 9. Because expert testimony is required to support a medical malpractice claim and because Mancha has failed to designate any expert witnesses, summary judgment should be granted.

The Federal Tort Claims Act authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred. 28 U.S.C. §§ 1346(b)(1), 2674. State law controls liability for medical malpractice under the FTCA. *Ayers v. United States*, 750 F.2d 449, 452 n. 1 (5th Cir. 1985). Under Texas law, in a medical malpractice action, the plaintiff bears the burden of proving (1) the physician's duty to act according to an applicable

8

standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence. *Id.* "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to meet the plaintiff's burden of proof. *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1977). The Fifth Circuit determined that when an expert witness is required and a *pro se* plaintiff fails to provide or designate one, the case may be dismissed at the summary judgment stage. *See Hannah v. United States*, 523 F.3d 597, 602 (5th Cir. 2008).

The Court's Scheduling Order established the week of January 27, 2020 as the trial date in this case, and 120 days before trial, or September 29, 2019, as the deadline to designate experts. *See* ECF No. 15. As of the date of this order, Mancha has neither designated experts nor acknowledged his failure to do so by requesting leave to designate experts or providing an explanation to the Court. In fact, after receiving the United States' Motion for Summary Judgment, which addresses his failure to designate experts, Mancha failed to respond. Because hyperlipidemia, chronic kidney disease, osteoarthritis of the knee and hip, gout, hypertension, anemia, gross hematuria, benign localized hyperplasia of the prostate, renal cell carcinoma and nephrectomies are not matters of common knowledge or within the general experience of a layman, Mancha was required to present expert testimony to establish the applicable standard of care and to show how the care he received breached that standard. *Hannah*, 523 F.3d at 523. Mancha's medical malpractice claims

9

fail as a matter of law without the support of expert testimony. *Hood*, 554 S.W.2d at 165–66. Therefore, summary judgment is **GRANTED** in favor of the United States and Mancha's claims are **DISMISSED with prejudice.**

## CONCLUSION

The Court finds that there is no genuine dispute as to any material fact and that the United States is entitled to judgment as a matter of law. As a result, summary judgment is **GRANTED** in favor of the United States and Mancha's claims are **DISMISSED with prejudice.**

**SO ORDERED** on this **2nd day** of **January, 2020**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE